Price, J.
As a summary of the facts alleged in the petition, it may be stated that at the election held on the 2d day of November, 1909, in Coal township, Jackson county, the relator, Charles Conrad was a candidate for the office of trustee of said township on the Democratic ticket, and the respondent, Thomas W. Patterson, was a candidate for same office on the Republican ticket. The proper officers holding the election counted the ballots, and found by, their method of counting, *95 that Conrad had received 307 votes for trustee, and Patterson 309 votes.
It is alleged that about twenty ballots were designated and marked by the voters in the following way; an “X” was marked in the circle under the eagle, the Republican emblem, in proper form, and on the same ballot (Australian) an “X” was marked in the proper place in the square to the left of the name of Charles Conrad, on all of said twenty ballots or more, and no other “X” or other mark was made on said ballots in relation to township trustee, and that the judges and clerks of the election should have counted in favor of Conrad, one vote on each of said ballots so marked, but the election officers failed and refused to credit or count for him any vote on said twenty ballots, and thereby deprived him of at least twenty votes, and thereby the count resulted in favor of respondent, Patterson, and the certificate of election was awarded him. He assumed possession of the office of trustee and held the same when the petition was filed in the circuit court.
The respondent denies the above claim and avers, that if it be true that said votes were cast and not counted for Conrad as alleged, that' at said election there were as many votes cast for him with the cross under the Democratic emblem, and a cross placed before his name, that were not counted for him by said election officers, as there were cast and not counted for Conrad, which votes should have been counted for respondent. The relator replies that not over five ballots of the kind mentioned in the answer were cast for Patterson and not counted in his favor.
*96 One of the judges of election, Mr. Griffith, testified at the hearing in circuit court, that during election day at the polls, there was dispute and discussion between members of the board, over counting of ballots for Mr. Conrad and Mr. Patterson, and when asked if the ballots in dispute were preserved, said they were all preserved, but that he had requested the presiding judge to burn them, but it was not done; that Mr. Shook, one of the election officers, had the string of all ballots and threw them in the ballot box and locked them up. This box was left in the town house that night. The relator, Conrad, was not satisfied with the proceedings concerning disputed ballots, and asked this election judge the privilege of an inspection of them, and in • company of the witness, one of the judges at that election, a day or two after the election, they repaired to the town house, opened the box and made partial inspection of the ballots; that no changes were made of the same to knowledge of witness. Witness was then asked if he made any changes. The defendant objected and the objection was sustained. The evidence offered was to prove by the witness that he made no change in any ballot, and saw none made by Conrad. Exception was taken to the ruling of the court.'
Thurman McGhee was called as a witness, who testified that he was an inspector of ballots at said election for the Democratic party; that he was present election night when the ballots were counted by the clerks and judges; that disputes arose as to how certain ballots should be counted in relation to Conrad, and also in relation to Pat *97 terson. The question first arose as to the claims for Conrad. Witness was asked how the ballots were marked that Conrad claimed. Objection was made' and sustained. The evidence offered was to prove by the witness that from fifteen to twenty were marked as claimed in the petition, and were not counted for Conrad, and that not to exceed five Avere cast for Patterson as described in his answer, that were not counted for him, and that all other ballots were counted as cast without any dispute.
The relator, Conrad, was also a witness, and testified that he, was a candidate for trustee and that he with witness Griffith, one of the election judges, saw the election box the next morning after the election when it was opened — was asked how many of the ballots he handled. He was not permitted to answer, and the evidence desired wasj that he had his hand on only one ballot. He was next asked if he made any change in any of the ballots, by mark or alteration. The objection tc this question was sustained. The proof offered was that witness had made no changes or alterations in any ballot. He then testified that the box was then locked up and turned over to Mr. Jenkins,' the clerk.
Conrad further testified that he was present when the count was made, and that disputes arose over how certain ballots should be counted as to himself and Patterson — that there were twenty votes for him they did not count.
Pie was then asked how these twenty ballots' were designated. Objection sustained and exception. The proof offered was that . they were marked with the “X” in the circle under the eagle, *98 and the “X” in the proper place to the left of his own name. And witness was not permitted to say whether the twenty ballots were counted in his favor or ruled out.
Thomas Jenkins testified he was not a member of the election board, .but was township clerk, and as such, custodian of the ballot box, which was left in the office of the township house and the key delivered to him. This election box came to his care the evening of the election. The ballot box was locked and the building locked. He had custody of the box always after that time and had it in court during the trial. It was still locked and the key in his possession.
Counsel for relator then asked the court that witness be permitted to open the box and produce the marked ballots in reference to Conrad and Patterson. Objection was made by counsel for Patterson, and it was sustained.
The proof offered was stated as follows: “We wish the record to show that the ballot box which the witness has had possession of is the ballot box that was used at this election, and that it contains the official ballots; it is admitted that they were all counted ballots, and the record will show that it contains ballots as to candidates other than the relator and defendant, and that there are from fifteen to twenty ballots in the box that are marked with the ‘X’ in the circle under the eagle, with the ‘X’ at the left of the name of Conrad in the proper place, and that there are not to exceed five of the ballots in the box with the 'X’ in the circle under the rooster, with the ‘X’ at the proper place at *99 the left of the name of the defendant, Mr. Patterson; and we desire to offer all the ballots separately — the ballots that are marked as alleged in the petition, and that if permitted the party would show that Conrad should have been credited with fifteen more votes, and Patterson not to exceed five.”
Objection to this tendered evidence was sustained to which relator excepted.
The above is the material evidence introduced on the trial, and a statement of what was excluded by the court, and hence the case turns on the competency of the offered evidence which was excluded.
It is evident that if the excluded evidence should have been received, Conrad had a majority of the votes cast for trustee as between him and Patterson, and should have the certificate to that effect.
The Australian Ballot Law has been a boon to the state, in that it has provided many safeguards for the rights of the electors, in having a secret ballot, intended to be free from interference, persuasion or intimidation, by bystanders or other persons, as well as protection against any' influence which any officer of the election board might desire to exert. For many years this law has been in force, which, with some amendments since its adoption in this state, has acceptably served our people and afforded a peaceable and orderly method of conducting our state, county, township and municipal elections.
As to contesting elections, statutory means of making such contest are provided as to the election *100 of state, county and congressional .officers, but-we find none prescribing the mode of contest of township trustee, and therefore the remedy by quo warranto is proper and appropriate in the present case.
The evidence discloses that the election officers did not follow the directions of Section 2966-39, Revised Statutes (Section '5090, General Code), and burn the ballots read and counted, but all were preserved, including disputed ballots, and they were placed in the election box, which was locked, and, with the key, delivered to its proper custodian, the township clerk, who had charge of it and brought it into court on the trial of the case in the court below. The ballots it contained were offered in evidence but excluded. The evi1 deuce offered tends to prove that the box had not been opened, after being locked and delivered by the election officers to the township clerk, electiqn night, save when it was opened the next morning by one of the election judges in presence of one of the election inspectors and the relator, and that no changes, marks ’ or alterations were made on the ballots by anyone, and while the proceeding was irregular and perhaps illegal, it is not claimed that any change in the ballot had been accomplished or attempted. We therefore assume that the ballots in the box placed in custody of the township clerk election night were the same, that it -contained when brought into court.
It is said that the lower court held that while the election officers did not burn the ballots, they were legally dead — legally destroyed, because they *101 should have been destroyed. ‘ But they’- had' no right to burn ballots that were in contest or disputed, if the judges entertained any -doubt as to their- legality. If such doubt was entertained, it was their duty under the section above indicated to seal them up and return - them to the proper authority.
If they had no such doubt, but consigned them to the flames, what t-hen? The; aggrieved candidate would have to resort to parol evidence to establish his right to the office. However, we need .not pursue this thought. • ■ ■
.' This box contained the original ballots — all of them, disputed and undisputed. They were the best evidence of how the electors had voted — -the very best, where it is shown, as in this case, that they had not been tampered with. If they were to be considered as legally dead, then it was error to.exclude the parol evidence as to the contents of the disputed ballots.' The electors' are not to be deprived of the fruits of their votes, when lawfully cast, if the secondary evidence can establish their rights. But were these ballots legally dead? or legally burned? 'They were dead as to use for voting purposes, but they were alive as to evidence of. what they contained when' the voters cast them. Surely the disputed dr contested ballots should not be considered dead because the judges of election had no doubt, • or difference of opinion, as to their legality. ' The judges had no right to legally extinguish ', suclr ballots' merely because they were unanimous, in' opinion that 'they ought not' be counted. .'These ballpts-. were dead'-in -the- sense *102 that they could not be voted again, but they were alive to be counted, if the judges wrongfully rejected them. A corpse is a proper subject of an inquest and a post mortem examination of the dead body frequently furnishes most valuable testimony. So, here, a post mortem examination of these ballots might have clearly established relator’s title to the office. If actually destroyed, parol evidence is competent to show how they should be counted when a contest is on in a court of law.
It is suggested that the remedy in cases like this is provided by said Section 2966-39, Revised Statutes, now Section 5090 of the General Code. We have just left a consideration of that section. According to its last paragraph, when the count of ballots is completed and the result proclaimed, it is said: “When all these requirements are complied with the judges shall, in the presence of the clerks and inspectors, destroy by burning the ballots so read and counted, provided, however, if there are any ballots cast and counted or . left uncounted concerning the legality of which there is any doubt or difference of opinion in the minds of the judges of election, said ballots shall not be destroyed, but sealed up and returned to the deputy state supervisor with the returns of the election, for such judicial or other investigation as may be necessary,. with a true statement as to whether they have or have not been counted, and if counted, what part and for whom.” We are of opinion this so-called remedy is not exclusive and should not be, because of the very incomplete showing *103 or statement required, and it can not apply here, because the disputed ballots were not sealed up and returned to anyone. On the contrary, they were strung and put in the ballot box with the other ballots, as already stated.
In rejecting the evidence offered by the relator, the circuit court erred. If it had been admitted and possessed the probative force claimed in the offer of proof, the relator was elected to the office of trustee and the proper order of ouster and induction into the office would have followed..
The judgment of circuit court is reversed and cause remanded for new trial and . further proceedings according to law.

Judgment reversed.

Spear, C. J., Davis, Shauck, Johnson and Donahue, JJ., concur.